IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ARKMAEL RAY SALES,**

    **Plaintiff,**

    vs.

**KENNETH SAUL,**

    **Defendant.**

Civil Action 2:13-cv-1126
Judge Watson
Magistrate Judge King

### REPORT AND RECOMMENDATION

Plaintiff, a state prisoner, brings this civil rights action under 42 U.S.C. § 1983 without prepayment of fees or costs. This matter is now before the Court for the initial screen of the complaint required by 28 U.S.C. §§ 1915(e), 1915A.

The *Complaint*, Doc. No. 1, names as the sole defendant a physician at the Pickaway Correctional Facility ("PCF"), and alleges that, on June 22,[1] plaintiff, who allegedly has a history of congestive heart failure, was taken to the PCF infirmary for complaints of pain and numbness. An EKG was read as abnormal and Dr. Kenneth Saul directed plaintiff to return to his cell but to let the medical staff know if the pain worsened. *Complaint*, p. 3. Two (2) days later, a Monday, plaintiff reported worsening pain. A repeat EKG was again abnormal. Plaintiff advised Dr. Saul that a 50% heart blockage had previously been diagnosed and that plaintiff was told that, should medication not work, stents would be inserted. Dr. Saul

---

[1] The *Complaint* does not identify the year of the events, but the Court presumes that the events referred to in the *Complaint* occurred in 2013.

1

directed plaintiff to return to his cell but to return to the infirmary in seven (7) days. *Id*. at 4. Plaintiff reported continued chest pain and numbness in his left arm and, six (6) days later, he was summoned to the infirmary. Another EKG was abnormal and Dr. Saul ordered that plaintiff be admitted to the infirmary for later transfer to the Correctional Medical Center ("CMC"). Because there was no room in the infirmary, however, plaintiff was left in the lobby for most of the day. At 6:30 that night, after plaintiff's inquiry, plaintiff was transported to the Ohio State Medical Center, where he was admitted. *Id*. at 5. A July 1, 2013 catheterization revealed a 70% blockage and "a stent was immediately put in place." *Id*. Plaintiff also alleges that an aorta aneurysm has grown "from 2. – to – 3. in the past two years," *id.*, but that Dr. Saul "refuses to do the necessary paper work" that would assure plaintiff's transport to a medical specialist "in five (5) minutes should the aneurysm burst." *Id*. Plaintiff seeks compensatory and punitive damages and an injunction requiring that defendant "institute rules and regulations as well a [sic] time statue [sic[ in which patients who show abnormal reading in administered testing wherein own[']s life is in danger, to be immediately transferred to the Ohio State Medical Center for specialist treatment." *Id*. at 6.

The Eighth and Fourteenth Amendments to the United States Constitution proscribe the "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Constitution does not, however, prohibit medical malpractice within

2

the prison context.  *Id.; Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3d Cir. 1976).  Of course, a dispute over the course of medical treatment is likewise not actionable under §1983.  *Young v. Gray*, 560 F.2d 201 (5th Cir. 1977).  On the other hand, the needless suffering of pain when relief is readily available gives rise to a cause of action against those whose deliberate indifference caused the inmate's unnecessary pain.  *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976). Moreover, an inmate can state a colorable claim under §1983 even if it is alleged that the difference to his medical needs existed for only a short period of time.  *Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983).

 The *Complaint* makes clear that plaintiff has not been denied medical care.  He has apparently been seen by medical personnel at PCF on multiple occasions, and has undergone multiple EKGs.  Dr. Saul, the only defendant named in the *Complaint*, conferred with plaintiff about his cardiac condition and directed his treatment.  Plaintiff was hospitalized and underwent placement of a stent within eight (8) days of his first complaint of chest pain and numbness.  There is no allegation of residual or lasting harm by reason of any delay in this treatment.

 A claim of failure to provide adequate medical treatment requires a showing that the defendant acted with deliberate indifference to a serious medical need of the inmate.  *Estelle v. Gamble,* 429 U.S. 104. There are two parts to the claim, one objective, one subjective. *Flanory v. Bonn,* 604 F.3d 249, 253 (6th Cir. 2010) (citing *Farmer v.*

3

*Brennan,* 511 U.S. 825, 833 (1994)). In order to satisfy the objective component, the inmate must demonstrate the existence of a sufficiently serious medical need; for the subjective component, the inmate must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care. *Id.*, at 253-54. The United States Court of Appeals for the Sixth Circuit has explained that a condition is "sufficiently serious" when the need for medical care is obvious even to a lay person. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-900 (6th Cir. 2004). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The requisite state of mind "entails something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835.

The *Complaint* alleges, at worst, negligence in providing medical care in the treatment of plaintiff's heart condition.[2] A claim of medical malpractice, however, is not actionable under 42 U.S.C. § 1983.

Plaintiff also complains that Dr. Saul has not authorized plaintiff's transfer to an institution within 5 minutes of specialized

---

[2] In the absence of damage or harm, however, even a claim of negligence is not actionable.

4

emergency medical care should he experience a rupture of his aortic aneurysm.[3] The facts alleged in the *Complaint* do not establish that Dr. Saul has denied plaintiff medical care for a serious medical condition or that a transfer to a prison facility within 5 minutes of specialized emergency medical treatment is constitutionally mandated under these conditions.

In short, it is **RECOMMENDED** that this action be dismissed, pursuant to 28 U.S.C. § 1915(e), for failure to state a claim upon which relief can be granted.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.

---

[3] Again, although the *Complaint* is not precise in this regard, the Court presumes that plaintiff's aneurysm has increased in size from 2 cm. to 3 cm.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

              s/Norah McCann King
               Norah M<sup>c</sup>Cann King
            United States Magistrate Judge

December 23, 2013